# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **JEFFERY TODD BOWER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:12-00424** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 16. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 19. Plaintiff has filed a Reply. Docket No. 21.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I.  INTRODUCTION

Plaintiff filed his application for Supplemental Security Income ("SSI") on September 4,

2008, alleging that he had been disabled since July 19, 2008, due to back problems, pain in the right side of the body, and depression.[1] *See, e.g.,* Docket No. 10, Attachment ("TR"), pp. 156, 170, 176, 345-370. Plaintiff's application was denied both initially (TR 76-77) and upon reconsideration (TR 78-79). Plaintiff subsequently requested (TR 80-81) and received (TR 101-118) a hearing. Plaintiff's hearing was conducted on November 23, 2010, by Administrative Law Judge ("ALJ") Donald Garrison. TR 20-40. Plaintiff and Vocational Expert, Gail Ditmore, appeared and testified. *Id.*

On December 15, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 7-19. Specifically, the ALJ made the following findings of fact:

> 1. The claimant has not engaged in substantial gainful activity since August 26, 2008, the application date (20 C.F.R. 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairment: degenerative disc disease (20 C.F.R. 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functioning capacity to perform light work as defined in 20 C.F.R. 416.967(b) except for occasional climbing, balancing, stooping, crouching, kneeling and crawling; and an allowance for alternating standing/walking/sitting at will.

---

[1] Plaintiff first sought mental health treatment in August 2010, nearly two years after his initial application for SSI. TR 368.

5.  The claimant is unable to perform any past relevant work (20 C.F.R. 416.965).

6.  The claimant was born on January 5, 1966 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 416.964).

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 26, 2008, the date the application was filed (20 C.F.R. 416.920(g)).

TR 12-16.

On February 11, 2011, Plaintiff timely sent a letter requesting review of the hearing decision. TR 153-155. On February 27, 2012, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270,

273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2)  If the claimant is not found to have an impairment which

significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: (1) "rejecting a significant aspect" of the opinion of consultative medical examiner, Dr. Lloyd Huang, and failing to properly evaluate the opinions of treating physicians, Drs. Weaver and Millet; and (2) improperly evaluating and assessing Plaintiff's credibility. Docket No. 16-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record

adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Evaluation of, and Weight Accorded to, the Opinions of Drs. Huang, Weaver, and Millet

With regard to the evaluation of, and weight accorded to, the opinion of consultative examiner Dr. Huang, Plaintiff argues that the ALJ erred by rejecting Dr. Huang's finding that Plaintiff would need frequent breaks or rest periods. Docket No. 16-1 at 12. Plaintiff contends that Dr. Huang has provided the "only evidence or report in the record from any physician who has actually seen or examined Plaintiff regarding his physical impairments and resulting limitations." *Id.* at 11. Plaintiff maintains that the treating records "provide substantial support to Dr. Huang's opinion that Plaintiff needs frequent breaks or rest periods." *Id.* at 12. Specifically, Plaintiff argues that the evidence of record demonstrates that: (1) medications, injections, and the use of a TENS unit were not consistently effective in controlling Plaintiff's ongoing pain; (2) any relief Plaintiff experienced was short-lived; (3) Dr. Huang's physical examination yielded many positive findings; (4) treatment notes from Plaintiff's mental health physicians indicated that Plaintiff was in a "great deal of back pain during the session which made it difficult for him to sit for long"; (5) Plaintiff reported the need to lie down or take hot showers in order to get some relief from the pain; and (6) Plaintiff reported that his activities rotated between sitting, standing, and laying down *Id*. at 12-14. Plaintiff maintains, therefore, that the ALJ's determination that "an allowance for standing/walking/sitting at will allows [Plaintiff] to shift positions as necessary to relieve pain, negating the need for frequent breaks or rest periods" (TR 15) was unsupported by the evidence.

Plaintiff also maintains that the ALJ erred by failing to properly evaluate the opinions of

Drs. Weaver and Millet, Plaintiff's mental health physicians. *Id*. at 14. Plaintiff contends that Drs. Weaver and Millet were treating physicians who completed a Medical Source Statement in September 2010 regarding Plaintiff's mental capabilities and limitations. *Id*. at 15. Plaintiff argues that the ALJ disregarded the opinions of Drs. Weaver and Millet concerning Plaintiff's mental impairments "without consideration of the required regulatory factors," and instead "performed his own assessment" of Plaintiff's mental capabilities. *Id*. at 16. Plaintiff further argues that the ALJ erred by stating that his mental impairments were unlikely to meet the durational requirement and by failing to "order a consultative psychological examination or follow up with Dr. Weaver and/or Dr. Millet in order to answer this question." *Id*. at 17.

Defendant responds that substantial evidence supports the ALJ's determination that Plaintiff would not require frequent breaks because an allowance for "standing/walking/sitting at will" would be sufficient to allow Plaintiff to change positions when uncomfortable. Docket No. 19. Defendant asserts that Plaintiff's treatment records and personal testimony indicate that his pain is "well-controlled" by his treatment regimen. *Id*. at 15. Defendant also argues that Plaintiff fails to explain how the ALJ's determination that an allowance for standing/walking/sitting at will would be insufficient. *Id*. at 16. Defendant further asserts that Dr. Huang's determination that Plaintiff's pain requires frequent breaks "stands in conflict with the State Disability Determination Services medical consultants' findings." *Id*. at 17.

With regard to the ALJ's evaluation of the opinions of Drs. Weaver and Millet, Defendant responds that the opinions of Drs. Weaver and Millet expressed in the September 2010 Medical Source Statement were not supported by clinical findings or by their own treatment notes, so the ALJ was correct in discounting them. *Id*. at 20. Defendant maintains that

Plaintiff's mental health treatment lasted only two months, that treatment notes showed no previous allegations of depression, and that, on his last visit, Plaintiff reported that his primary complaints were physical, he was doing well on his medication, and he denied significant depression. *Id.* at 20-21. Defendant also argues that the ALJ was not required to order a consultative psychological examination under the circumstances present in the case at bar because the ALJ has discretion in determining when to order psychological examinations. *Id.* Defendant additionally contends that the ALJ's determination that Plaintiff's "mild limitations" lasted no more than eight months was based on sufficient evidence from the record. *Id.*

In his Reply, Plaintiff reiterates his reports of experiencing pain between a six and a nine on a ten point scale, with little-to-no or short-lived relief, and his need to take a hot shower and/or rotate between sitting, standing, and lying down in order to help control his pain. Docket No. 21. Plaintiff also replies that Defendant erroneously compared his physical medical records to his mental medical records, and notes that these records do not address the same issues. *Id.* at 2-3. Plaintiff contends that both Defendant and the ALJ mischaracterized the seriousness of Plaintiff's mental impairments by only discussing the portions of the records that supported their positions, and that they failed to properly consider his treatment records, relying instead on their own conceptions of his mental state. *Id.* at 4. Plaintiff argues that "the opinions from Dr. Weaver and Dr. Millet are the only medical opinions of record with regards to Plaintiff's mental impairments," and "[a]s such, their opinions should be given deference by the ALJ." *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion

controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[3] *See, e.g.,* 20 C.F.R. § 404.1527(d); *Allen v. Commissioner*, 561 F.3d

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or

646 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Commissioner*, 276 F.3d 235, 240 (6th Cir. 2002) (*quoting Harris v. Heckler*, 756 F.3d 431, 435 (6th Cir. 1985)). If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

On November 11, 2008, Plaintiff visited Dr. Lloyd K. Huang of the Tennessee Disability Determination Services for a consultative examination. TR 226-229. After a physical examination and review of "x-ray evidence of reduced range of motion on back examination," Dr. Huang opined that "the patient can occasionally lift 20 pounds, frequently lift 10 pounds, can stand and walk for four to five hours of an eight-hour day and can sit for six hours of an eight-

_____

makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 C.F.R. §1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Commissioner*, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010); *Nelson v. Commissioner*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006); *Hall v. Commissioner*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

hour day with frequent breaks." TR 228. Dr. Huang also noted that Plaintiff "should avoid driving or heavy machinery due to his medications." *Id.* Dr. Huang opined, "[p]erhaps, vocational rehabilitation for sedentary work would be helpful." *Id.*

In December 2008, DDS Medical Consultant, Dr. Susan L. Warner, reviewed Dr. Huang's report and completed a Physical Residual Functional Capacity assessment regarding Plaintiff, opining that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk, with normal breaks, about six hours in an eight-hour workday, and sit, with normal breaks, for a total of about six hours in an eight-hour workday. TR 231. Dr. Warner also opined that Plaintiff could push and/or pull without limitation, and could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl, but could never climb ladders/ropes/scaffolds. TR 231-232. She further opined that Plaintiff did not suffer from any manipulative, visual, communicative, or environmental limitations. TR 233-234. Dr. Warner noted the following:

> CL reports ongoing pain for which he is now taking Lortab. Reports hat [*sic*] he can go to the store but cannot carry the bags. Can sit for 2 hours at a time. Does cook simple foods. Reports he has progressive illness and that pain is worse with activity. Reported at CE that he can walk about ½ mile continuously. CL has MDI which could reasonably be expected to produce his alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of these symptoms are not supported by the MER and are only partially credible.

TR 235.

With regard to the discounting of Dr. Huang's opinion that Plaintiff would need frequent breaks or rest periods, the ALJ explained:

> [T]here is no opinion from any treating physician relating to the claimant's work capabilities. Dr. Huang found limits consistent

13

> with light exertion work except for [an] allowance for frequent
> breaks. I agree with Dr. Huang's findings except for the
> restriction for frequent breaks. There are no indications or other
> objective evidence from any treating provider that would
> necessitate frequent breaks or rest periods. Alternatively, an
> allowance for standing/walking/sitting at will allows the claimant
> to shift positions as necessary to relieve pain, negating the need
> for frequent breaks or rest periods.

TR 15.

When determining that an allowance for standing/walking/sitting at will would sufficiently allow Plaintiff to relieve his pain, the ALJ discussed the medical opinions of treating physician Dr. Sun and DDS consultant Dr. Warner, as well as Plaintiff's subjective reports, and noted that Plaintiff's pain was generally regulated. TR 14-15. Specifically, the ALJ recounted Plaintiff's report to Dr. Sun that "the nerve blocks he was receiving every 3 months were helping"; that between July 2008 and August 2010, Dr. Sun found Plaintiff's physical examinations to be "normal except for some tenderness and some limited range of motion"; and that during "nearly all visits," Plaintiff "reported that his medications were working well." *Id., citing* TR 243-297, 299-341. Dr. Sun's repeatedly normal physical examinations "except for some tenderness and some limited range of motion," and Plaintiff's reports that his medications and injections were "working well" and "helping," are inconsistent with Dr. Huang's assertion that Plaintiff would require frequent breaks.

In his discussion, the ALJ also referenced Dr. Warner's Residual Functional Capacity assessment of Plaintiff, noting her opined "restrictions for light work with no climbing ladders/ropes/scaffolds and occasional posturals." TR 15, *citing* TR 230-238. As discussed above, Dr. Warner opined that Plaintiff could stand, walk, and sit with normal breaks for "about six hours in an 8-hour workday." TR 231. Dr. Warner also opined that Plaintiff could sit

continuously for two hours, and she noted Plaintiff's report that he could walk for approximately ½ mile continuously. TR 235. Dr. Warner's opinion that Plaintiff could stand, walk, and sit with normal breaks for "about six hours in an 8-hour workday" is likewise inconsistent with Dr. Huang's assertion that Plaintiff would require frequent breaks.

The ALJ correctly noted that the record does not contain an opinion from any treating physician regarding Plaintiff's work capabilities. TR 15. Accordingly, there is no treating physician opinion evidence reflecting or supporting Dr. Huang's finding that Plaintiff would require frequent breaks.

With regard to Plaintiff's subjective reports, the ALJ discussed them as follows:

> The claimant alleges disability due to degenerative disc disease. He reports that low back pain has bothered him chronically for several years. He reports that his daily pain is a 7 on a scale from 1 to 10 in severity. The pain varies with activity and runs into his buttocks and at times into his right ankle intermittently. He reports that he can probably walk about half a mile, stand for about an hour, and sit an hour at a time. . . .
>
> . . .
>
> The claimant reports ongoing pain for which he takes narcotic pain relievers and muscle relaxers. He cooks simple meals, stated that he could walk ½ mile continuously (Ex. B1F) and sit 1 hour uninterrupted. . . . The claimant's symptoms seem to be well-controlled with Lortab and Soma injections, and occasional use of the TENS unit as indicated in Dr. Sun's records. Ex. B4F.

TR 14, 15, *citing* TR 226-229, 243-297.

Plaintiff's reports that he could walk about half a mile, stand for about an hour at a time, and sit for about an hour at a time are consistent with the ALJ's determination that a sit/stand/walk at will option would be appropriate for Plaintiff.

As discussed, Dr. Huang's opinion contradicts other substantial evidence in the record,

including the opinions of Drs. Sun and Warner. As the Regulations state, the ALJ is not required to give controlling weight to a physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Because the ALJ discussed the evidence of record and noted the absence of any objective or treating opinion evidence supporting Dr. Huang's finding that Plaintiff would require frequent breaks, the ALJ is not bound to accept Dr. Huang's finding. Accordingly, Plaintiff's argument on this point fails.

With regard to Plaintiff's two month mental health treatment with Drs. Millet and Weaver, Plaintiff first saw Dr. Millet at the Matthew Walker Comprehensive Health Center in August 2010, and was diagnosed with "Major Depression, Single Episode, Chronic." TR 368-370. During this visit, Plaintiff stated that he had experienced feelings of depression for six months, was trying to qualify for disability, and needed an evaluation in order to qualify for disability benefits. *Id*. Dr. Millet referred Plaintiff to Dr. Patricia Weaver for assistance in completing the disability forms. *Id*.

Dr. Weaver saw Plaintiff a few days after his initial appointment with Dr. Millet in order to complete lab work (TR 366-367), and again on September 11, 2010 in order to complete paperwork relating to his ability to do work-related activities for his attorney (TR 356-365). At his September 11, 2010 appointment, Plaintiff "reported feeling some anxiety but overall good." *Id*. Plaintiff again returned on September 25, 2010. TR 351-355. During this visit, Dr. Weaver noted that Plaintiff "was having a great deal of back pain during todays [*sic*] session," which "made it difficult for him to sit for long." *Id.* Dr. Weaver also noted that Plaintiff received the completed documentation for his attorney regarding his "work readiness." *Id.* Plaintiff next saw

Dr. Weaver on October 9, 2010. TR 348-350. During this appointment, Plaintiff reported that he "was doing well on all current medications" without any negative side effects, but "still experience[d] depression though not as severe as it was when he first started coming to the center." *Id.* Plaintiff also noted that he continued to experience back pain "on a daily basis," felt anxious in crowds, and sometimes wanted to be left alone. *Id.* Plaintiff's final appointment at the Center was on October 23, 2010, a little more than two months after his initial appointment. TR 345-347. At this visit, Plaintiff reported "doing well on his current medications" with "no adverse side effects," and denied having "significant depression," but noted continued trouble sleeping and back pains. *Id.*

Drs. Weaver and Millet completed the Medical Source Statement ("MSS") of Ability to do Work-Related Activities (Mental) at issue on September 13, 2010. TR 342-344. In their MSS, Drs. Weaver and Millet opined that Plaintiff was mildly limited in his ability to carry out simple instructions; moderately limited in his abilities to understand and remember simple instructions, make judgments on simple work-related decisions, carry out complex instructions, and make judgments on complex work-related decisions; and markedly limited in his abilities to understand and remember complex instructions, interact appropriately with supervisors and co-workers, and respond to "usual work situations and to changes in a routine work setting." *Id.* They opined, however, that Plaintiff had no limitations on his ability to interact with the public. *Id.* Drs. Weaver and Millet indicated that their findings were supported by their observations, Plaintiff's reports, and Plaintiff's work history, and they noted:

> Patient performs best when told what to do explicitly. Tends to avoid making work related decisions. Rather he will ask others what to do. Errors are probable when given complex instructions or assignments.

. . .

> Mr. Bower experiences difficulty functioning effectively with
> unfamiliar people, in novel situations and when interacting with
> large groups of people. In these situations he is likely to experience
> anxiety and difficulty concentrating.

*Id.*

In reviewing this evidence, the ALJ found that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and is therefore nonsevere." TR 12-13. In so finding, the ALJ considered the four functional areas listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 used to determine mental impairments. *Id.* The ALJ explained his finding by noting that the Plaintiff "has no restriction in activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration." *Id.* The ALJ noted that because Plaintiff's "impairment causes no more than 'mild' limitation in any of the first three functional areas and he has experienced 'no' episodes of decompensation which have been of extended duration in the fourth area," his mental impairment was properly classified as nonsevere according to 20 C.F.R. 416.920a(d)(1). *Id.*

Moreover, the ALJ stated:

> The treatment record notes show no allegations of depression until
> August 2010, when the [Plaintiff] reported that he was depressed
> and needed an evaluation to aid in his endeavor for disability
> benefits. At that time, he reported that he had been depressed for 6
> months. By [] October 2010, he reported that he was feeling better
> and his only complaints were physical in nature. There is no
> evidence of ongoing problems performing daily activities or
> getting along with others, though he may have some difficulty with
> concentration, mostly secondary to physical pain issues. However,

his concentration is mildly affected at best. Furthermore, the records do not support a finding that the [Plaintiff's] mental impairments have met or are likely to meet the durational requirement as indicated in 20 C.F.R. 416.909.

*Id.*

Contrary to Plaintiff's contention that the ALJ failed to properly evaluate the opinions of Drs. Weaver and Millet, the ALJ explicitly discussed their treatment records and evaluated the information contained in those records per the requirements set forth in the Regulations as shown above. Moreover, although Drs. Millet and Weaver saw Plaintiff on a total of six occasions over a period of approximately two months, the ALJ was not bound to accept the limitations contained in their MSS because they contradicted other evidence in the record, including their own treatment notes, and because they were not supported by medically acceptable clinical and laboratory diagnostic techniques.

As the Regulations state, the ALJ is not required to give controlling weight to a physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the evaluation is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). As such, the Regulations do not mandate that the ALJ accord the opinions contained in the MSS of Drs. Weaver and Millet controlling weight. Accordingly, Plaintiff's argument on this point fails.

Next, with regard to Plaintiff's argument that the ALJ erroneously found that Plaintiff's mental impairments were unlikely to meet the durational requirement, the ALJ properly so

found. As noted, the impairment must "last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The record reflects that, although Plaintiff reported at his initial appointment with Dr. Millet that he had been depressed for six months prior to seeking treatment, his condition improved and he felt better after two months of treatment.  *See* TR 345-370.  By his own reports, therefore, Plaintiff's depression lasted at most eight months, which is less than the required durational period.

Finally, although Plaintiff contends that the ALJ should have ordered a consultative examination regarding his "mental impairments and resulting limitations" in order to establish the durational period of his mental impairments (Docket No. 16-1 at 17), the Sixth Circuit has repeatedly held that an ALJ is not required to order a consultative examination in order to assist a Plaintiff in establishing disability.  *See, e.g., Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990); *Landsaw v. Secretary*, 803 F.2d 211, 214 (6th Cir. 1986); and *Kimbrough v. Secretary*, 801 F.2d 794, 797 (6th Cir. 1986).  Instead, the ALJ will use a consultative examination "to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, [and] a diagnosis or prognosis."  20 C.F.R. § 404.1519a(a)(2). All treatment records relating to Plaintiff's mental health are contained in the record (TR 345-370), and were considered by the ALJ (TR 12).  Accordingly, a consultative examination was not necessary, and Plaintiff's argument fails.

## 2.  Evaluation of Plaintiff's Credibility

Plaintiff contends that in finding that his subjective complaints were not fully credible, the ALJ did not appropriately address his complaints of pain.  Docket No. 16-1.  Specifically,

Plaintiff contends that his subjective complaints were consistent with his treatment records from Dr. Sun, and he argues that the ALJ erroneously noted that his pain was "well-controlled." *Id.* Plaintiff also argues that the ALJ did not make clear the weight accorded to Plaintiff's testimony. *Id*. at 22.

Defendant responds that the ALJ appropriately discredited Plaintiff's credibility because the "treatment notes from examining physicians, the effectiveness of his treatment, and Mr. Bower's reported activities of daily living indicate that his physical impairments cause him a certain amount of pain, but that same evidence does not support his subjective complaints that his pain is disabling." Docket No. 19 at 24.

Plaintiff replies that the ALJ's determination that Plaintiff's pain is "well-controlled" is inconsistent with his medical records and testimony. Docket No. 21. Plaintiff also replies that the ALJ selectively used his testimony and ignored other parts without explanation. *Id*.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating

symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the

ALJ's personal observations, and the objective medical evidence contradict each other."").

Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a

debilitating degree that it prevents an individual from engaging in substantial gainful activity."

*Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider

the following factors and how they relate to the medical and other evidence in the record: the

claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage and effect of medication; and the other

treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)

(*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the

evidence in the record, and by making personal observations of the claimant at the hearing, an

ALJ may determine that a claimant's subjective complaints of pain and other disabling

symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir.

1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d

524, 538 (6th Cir. 1981).

With regard to Plaintiff's credibility, the ALJ in the case at bar stated:

> After careful consideration of the evidence, the undersigned finds
> that the claimant's medically determinable impairments could
> reasonably be expected to cause the alleged symptoms; however,
> the claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not credible to the extent
> they are inconsistent with the above residual functional capacity
> assessment.
> . . .
>
> . . . The claimant's impairments could reasonably be expected to

> produce the alleged symptoms; however, the objective medical
> evidence of record does not support his statements concerning the
> intensity, persistence and limiting effects.

TR 14-15.

When determining that Plaintiff's subjective complaints were inconsistent with the record and his determined RFC, the ALJ discussed, *inter alia*, reports from treating physician Dr. Sun, *supra*, regarding the effectiveness of Plaintiff's pain medications, including Lortab, Soma injections, and occasional use of a TENS unit, and Dr. Sun's conclusions that Plaintiff's physical examinations were generally normal except for some minor impairments. *Id.* Further, the ALJ discussed the reports of DDS physicians Drs. Huang and Warner to show that Plaintiff was limited to "light exertion work, specifically standing/walking 4 to 5 hours and sitting 6 hours with frequent breaks," and some "restrictions for light work with no climbing ladders/ropes/scaffolds and occasional posturals." *Id.* at 14-15. Finally, the ALJ discussed Plaintiff's subjective reports that he takes medication for continuous pain, can cook simple meals, walk half a mile continuously, and sit for one hour. *Id.* at 15.

As can be seen, the ALJ's decision addresses not only the medical evidence, but also Plaintiff's testimony and his subjective claims, indicating that these factors were considered. *Id.* It is clear from the ALJ's articulated rationale that, although there is evidence which could support Plaintiff's subjective claims of pain, the ALJ chose to rely instead on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th

Cir. 1981).  An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility.  *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)).  Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence.  *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)).  If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that the "objective medical evidence of record does not support [Plaintiff's] statements concerning the intensity, persistence and limiting effects." TR 15. The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper.  Therefore, this claim fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to

this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge